UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IVETTE MAYLENE AGUIRRE MENDEZ, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-3208 |
| | § | |
| SUBMAR, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendants' motions to dismiss and plaintiffs' motion to stay. After considering the motions, responses, replies, and applicable law, the Court is of the opinion that the motions to dismiss (Dkts. 18, 20) should be GRANTED and the motion to stay (Dkt. 16) should be DENIED as moot.

**I. BACKGROUND**

This lawsuit stems from plaintiffs' claims that the defendants colluded to intentionally destroy plaintiffs' business operations in Mexico. Plaintiffs operated Iner Servicios, which was the leading provider of concrete mud mats for the petroleum industry in Mexico. Dkt. 15 at 7. Submar, a Louisiana-based company, and its Mexican affiliate, the Elher Group, formed Submarelher in order to compete in the concrete mat market in Mexico. *Id.* at 8. Until this time, Submar had primarily only manufactured and distributed similar concrete mats in the United States. *Id.*

Plaintiffs claim Submarelher was unsuccessful in securing contracts in Mexico, and thus, the defendants conspired to obtain invalid Mexican copyrights to compete with plaintiffs, and ultimately, to drive them out of business. *Id.* Specifically, plaintiffs assert that defendants intentionally applied for and obtained allegedly fraudulent copyrights in Mexico for the concrete mat design. *Id.* at 9.

Two copyrights were issued in the name of Francisco Marcos Wignall, President of Submarelher, on January 23, 2008 and December 9, 2009. *Id.* Plaintiffs argue these copyrights are facially invalid because, under Mexican law, a person cannot obtain a copyright for commercial or industrial applications. *Id.*

Plaintiffs allege the defendants colluded with corrupt Mexican officials to enforce the invalid copyrights by seeking orders to seize plaintiffs' factory and arrest plaintiffs for criminal violations of Mexican copyright laws. *Id.* at 12. In September 2010, Submarelher filed a complaint to the Mexican governmental investigative agency claiming Iner Servicios was infringing the claimed copyrights. *Id*. at 13. On October 27, 2010, a Mexican federal police force raided the Iner Servicios factory, seized its property, and shut down operations. *Id.* Plaintiffs' business has not resumed operations since this date. *Id.* Defendants also used the allegedly fraudulent copyrights to seek arrest warrants for Jose Farrera Redondo and Ivette Maylene Aguirre Mendez, the owners of Iner Servicios. *Id.* Pursuant to the arrest warrant, Farrera-Redondo was arrested in April 2011. *Id.* at 14. He spent nearly six months in jail before a judge ruled the preventative incarceration was not warranted for the criminal offense alleged. *Id.* at 16. The arrest warrant was never executed on Aguirre Mendez because she was in Houston, Texas. *Id.* The charges were eventually dismissed against her by a judge in Mexico. *Id.* at 17.

Based on these circumstances, plaintiffs filed this lawsuit against defendants alleging an unlawful scheme to destroy plaintiffs' business in order to monopolize the concrete mat business in Mexico. On October 26, 2012, plaintiffs filed their complaint, and later amended it, alleging causes of action for civil conspiracy, tortious interference, intentional infliction of emotional distress, and malicious prosecution. Dkts. 1, 15. Plaintiffs also filed a motion to stay this proceeding pending

the outcome of litigation ongoing in Mexico related to the validity of the copyrights and criminal charges.  Dkt. 16.  Plaintiffs maintain they filed this lawsuit in order to avoid any possible statute of limitations bar.  *Id.* at 8.

Defendants filed motions to dismiss this action based on the act of state doctrine, comity and forum non conveniens.  Dkts. 18, 20.  This court is persuaded that the adjudication of this matter in Mexico will best serve the convenience of the parties and interests of justice, and thus, will decline jurisdiction on the basis of forum non conveniens, as discussed below.  Because the court finds that forum non conveniens fully resolves the defendants' motions to dismiss, the court will not address the other grounds asserted and will deny the motion to stay as moot.

## II.  LEGAL STANDARD

### A.    Forum Non Conveniens

A federal court may decline to exercise jurisdiction "where it appears that the convenience of the parties and the court and the interest of justice will best be served by trying the action in another forum."  *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1154 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S. Ct. 1928 (1989).  While the decision to dismiss an action on the ground of forum non conveniens is within the discretion of the court, it should be exercised based on a structured "procedural framework guiding the district court's decisionmaking process."  *Id.* at 1165.

The forum non conveniens analysis involves four considerations.[1]  First, the district court

---

[1]  The defendant has the burden of persuasion as to each of these considerations.  *In re Air Crash*, 821 F.2d at 1164.  A defendant "need not submit overly detailed affidavits to carry its burden, but it 'must provide enough information to enable the district court to balance the parties' interests.'"

must assess whether an alternative forum is available. *Id.* An alternative forum is available if "the entire case and all parties can come within the jurisdiction of that forum." *Id.* Second, the district court must decide if the alternative forum is adequate. *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002). An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *In re Air Crash*, 821 F.2d at 1165.

If the district court decides an alternative forum is both available and adequate, it next must weigh various private interest factors. *Gonzalez*, 301 F.3d at 380. The private interest factors include the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Air Crash*, 821 F.2d at 1162.

If consideration of these private interest factors counsel against dismissal, the district court moves to the fourth consideration in the analysis, namely consideration of the public interest factors. *Id.* The public interest factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies resolved at home, the interest in having a trial of a diversity case in a forum that is familiar with the law that must govern the action, the avoidance of unnecessary problems in conflicts of law or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 1162-63. It is only if the court cannot determine whether the private factors weigh in favor of dismissal that it is required to examine the public interest factors at all. *Id.* at 1165. If these factors weigh in the moving party's favor, the district court may dismiss the case. *Id.*

---

*Id.* at 1164-65 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S. Ct. 252 (1981)).

Finally, if the court concludes that dismissal is warranted, it must "ensure that a plaintiff can reinstate the suit in the alterative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." *Id.* at 1166; *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991).

### III.   ANALYSIS

#### A.   Available and Adequate Forum

Initially, defendants must demonstrate that Mexico is both an available and adequate forum. In order to be available, the entire case, including all parties, must come within the jurisdiction of that forum. *Gonzalez*, 301 F.3d at 380.  Generally, a defendant's submission to jurisdiction in the alternative forum renders the forum available for purposes of the forum non conveniens analysis. *In re Ford Motor Co.*, 591 F.3d 406, 412 (5th Cir. 2009); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1245 n.3 (5th Cir. 1983).  In the Fifth Circuit, if a defendant submits to jurisdiction in Mexico, a "nearly airtight presumption" arises that Mexico is an available forum based on the numerous cases considering Mexico as an alternative available forum.  *In re Ford*, 591 F.3d at 413 (referencing cases where Mexico was deemed an available for forum for tort suits against defendants that were willing to submit to jurisdiction). Here, all defendants agree that they will submit to jurisdiction in Mexico for the resolution of this dispute, making Mexico an available forum.  Dkts. 21 at 16, 40 at 4.

Plaintiffs dispute the availability of Mexico as a proper forum because Aguirre Mendez is a United States citizen and resident of Houston, Texas.  Plaintiffs suggest that Aguirre Mendez may not be able to bring suit in Mexican courts.  However, the court is not persuaded that Aguirre Mendez could not bring this case in a Mexican court.  Aguirre Mendez owns and operates a business

in Mexico.   Currently, she has or has had lawsuits pending in Mexico related to the copyrights and arrest warrant at issue in the instant case, allowing her to seek redress for her grievances.   *See Dickson Marine, Inc. v. Panalpina, Inc.*, 173 F.3d 331, 342 (5th Cir. 1999) (noting when a party has already submitted to the jurisdiction of a foreign court, the existence of an alternative and adequate forum is much clearer).   Further, cases involving plaintiffs which are citizens of both the United States and a foreign country have been dismissal on grounds of forum non conveniens.   *See, e.g., Ibarra v. Orica U.S.A., Inc.*, 493 Fed. Appx. 489, 491 (5th Cir. 2012) (finding Mexico was an available forum in an action by Mexican and American citizens against Mexican and American companies); *Anderson-Tully Lumber Co. v. Int'l Forest Prods. S.r.L*, 2007 WL 2872413, *1 (S.D. Miss. 2007).   The fact that plaintiffs and Iner Servicios are actively participating in proceedings in Mexico's court system related to these copyrights and arrest warrants demonstrates that Mexico provides an available forum for the issues in dispute.

Plaintiffs, further, argue that the United States defendants have not shown they are amenable to suit in Mexico.   In support of their argument, plaintiffs rely on the recent holding in *Taylor v. Tesco Corp. (U.S.)*, 2013 WL 361826 (S.D. Tex. 2013).   However, *Taylor* differs in one significant respect from the present action.   In *Taylor*, all defendants did not agree to submit to jurisdiction in the foreign forum.   *Id.* at *1.   Here, however, all defendants, including the United States defendants, agreed to submit to the jurisdiction of Mexico.

Plaintiffs argue that Mexico is also unavailable because the statute of limitations may have run on one particular cause of action, as discussed in defendants' expert's affidavit.   Defendants submitted the declaration of Ignacio Pinto-Leon, a licensed Mexican lawyer and professor of Mexican Law Studies at the University of Houston Law Center. Dkt. 21, Ex. 1 at 1.  Pinto-Leon was

an active civil and criminal litigator in Mexico before moving to the United States and continuing

his studies and research on United States and Mexican legal relations. *Id.* at 2.  He described the two

potential extra-contractual causes of action under Mexican law that may be available to plaintiffs

based on the allegations made in their first amended complaint. Dkt. 21, Ex. 1 at 4.

First, plaintiffs could bring suit under a theory of "unjust enrichment." *Id.* at 16-17.  For

unjust enrichment, the plaintiffs have five years from the date of damage to bring an unjust

enrichment claim.  *Id.* at 17.   Prevailing plaintiffs have the right to recover "material damages" in

order to be "made whole again" and "moral damages" for certain "intangible losses" suffered by

plaintiffs.  *Id.* at 17-18.  Second, an action for "obligations born out of illicit acts" may also be

available to plaintiffs.  The statute of limitations is two years from the date of damage.  *Id.* at 18-19.

"Material damages" and "moral damages" are also recoverable for this cause of action under

Mexican law.  *Id.* at 19.

Plaintiffs challenge the availability of Mexico as an alternative forum because the statute of

limitations may have run for the action of obligations born out of illicit acts.  However, plaintiffs are

not wholly barred from presenting their cause in Mexican courts.  Pinto-Leon does not make clear

when the "date of damage" begins to accrue for purposes of the statute of limitations in an

obligations born out of illicit acts action.  Depending on the action challenged, this date may vary

and plaintiffs may still have a viable cause of action for obligations born out of illicit acts.

Notwithstanding this particular cause and when its statute of limitations may expire, Mexico still

presents an available forum for plaintiffs to pursue an unjust enrichment claim and seek the same

amount and type of damages that would be awarded for an obligations born out of illicit acts

violation.  The statute of limitations is up to five years, making this cause of action clearly available to plaintiffs.

Further, plaintiffs' concern in this regard is addressed in the conditions of dismissal required by the court.  As a condition of this dismissal, the defendants will have to agree to waive any applicable statute of limitation defense under Mexican law which would have expired after the filing of this action.  Thus, with this waiver, defendants will not be able to assert any statute of limitation defense accruing after the filing of this cause in the proceedings in Mexico.  Plaintiffs challenged the waiver on the basis that defendants have not shown that Mexico will accept any stipulation to waive defenses by the defendants.  Courts, however, have not required a showing by the defendant that the alternative forum will accept the defendant's stipulation to waive applicable defenses.  *See, e.g., Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003); *Neo Sack, Ltd. v. Vinmar Impex, Inc.*, 810 F. Supp. 829, 833 (S.D. Tex. 1993).  On these bases, the court finds that Mexico provides an available forum for the plaintiffs to pursue relief for the conduct alleged.

Finally, plaintiffs assert Mexico is inadequate because the Mexican court system does not afford the same procedural safeguards as American courts by way of the jury system, discovery and damages.  Further, plaintiffs allege they would be treated unfairly (based on their past experience with the Mexican legal system).  An alternative forum is adequate if "the parties will not be deprived of all remedies or treated unfairly."  *In re Air Crash*, 821 F.2d at 1165.  Mexico does not become an inadequate forum simply because plaintiffs "may not enjoy the same benefits as they might receive in an American court."  *Id.*

Courts have consistently found that Mexico presents an adequate forum for tort claims. *Gonzalez*, 301 F.3d at 381 (citing cases wherein it was held limitations on causes of action or tort damages did not render Mexico an inadequate alternative forum); *Neo Sack*, 810 F. Supp. at 834 (S.D. Tex 1993) (neither discovery limitations nor the lack of a jury trial in Mexico make it an inadequate forum).  Further, Pinto-Leon discussed some of the procedural safeguards offered by the Mexican legal system.  Specifically, federal civil courts are empowered to receive evidence submitted by the parties and order production of evidence.  Dkt. 21, Ex. 1 at 8.  Judges also have the ability to compel witnesses to appear before them, including the enforcement power to fine or administratively arrest a non-compliant witness.  *Id.*  Although the Mexican legal system may not provide the same procedures or privileges as the American legal system, that does not make Mexico inadequate.  *See Piper Aircraft*, 454 U.S. at 255.  The plaintiffs' concerns regarding the adequacy of the Mexican legal system are further undermined by the fact that plaintiffs are currently litigating the validity of the copyrights and arrest warrants in Mexican courts and have asked this court to stay these proceedings in order to rely on the outcome of the Mexican court proceedings.  *See* Dkt. 16 at 5 ("Mexican authorities have begun righting the wrongs committed by the defendants . . ..").

Thus, this court finds that the Mexico provides an available and adequate forum for the resolution of this dispute.  Plaintiffs are presently litigating related issues in the Mexican court system and will be protected from any obstructions posed by the defendants in a Mexican forum by way of the conditions imposed on dismissal.

**B.   Private Interest Factors**

Now that the court has determined that Mexico is an available and adequate forum, it must consider whether the private interest factors weigh in favor of dismissal.  *In re Air Crash*, 821 F.2d

9

at 1162.  The private interest factors include relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and all other practical problems that make trial of a case easy, expeditious and inexpensive.  *Id.*

The private interest factors also support dismissal of this case in favor of a Mexican forum. First, sources of proof in this case will largely come from Mexico.  *See* Dkt. 21, Ex. 2 at 3.  This litigation stems from the acts of a Mexican company, which obtained and enforced allegedly invalid copyrights issued by Mexican officials, which led to the seizure of a Mexican company and the arrest of a Mexican citizen.  The key witnesses will include largely Mexican witnesses, including the principals and employees at Submarelher, principals or employees at Iner Servicios, Mexican officials involved in the issuance and enforcement of the copyrights, and Mexican officials involved in the criminal investigation and prosecution of plaintiffs.  Experts in Mexican law will also likely be necessary in order to inform the court or jury on the issues of the validity of the copyrights and the enforcement of these copyrights under applicable Mexican criminal statutes.  All of these witnesses will likely be Spanish speakers, making translation necessary at depositions and trial.

The majority of documents concerning the conspiracy are likely held at Submarelher, and to a lesser extent, at Submar.  The key sources of liability proof would include documents related to the provision of the Mexican patents and copyrights issued to Submarelher and communications and files of Submarelher, which may overlap with those of Submar.  Because most of the liability documents at issue are held by the parties to this suit, they would be the subject of discovery in either forum. The documents related to Iner Servicios' damages would also be found at that company in Mexico.  Many, if not all, of these documents will require translation from Spanish to English if the case were maintained here.

Plaintiffs contend that defendants have not met their burden demonstrating that access to sources of proof weighs in favor of dismissal because they failed to identify specific witnesses or documents in Mexico. Such specificity is not required. *See Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 661 n.6 (S.D. Tex. 2003). The facts alleged by plaintiffs and the location of the parties largely dictate the location of the evidence in this case. Of the three plaintiffs, two reside in Mexico and of the six defendants, four reside in Mexico.

Plaintiffs identify several witnesses that they claim will be significant to the litigation and are located in either Houston, Texas or Houma, Louisiana. Specifically, plaintiffs identify the following four witnesses who are not parties to the litigation: 1) Monique Roberts, Offshore Division Manager for Submar; 2) Wendy Buskop, former patent counsel of Submar; 3) Pat Hendricks, original draftsman of the concrete mud mat design; and 4) Ken McCallister, former president of Submar. First, plaintiffs overstate the importance of certain of these witnesses to plaintiffs' claims. Additionally, the presence of these witnesses in the United States does not outweigh the fact that the majority of key witnesses (and parties) are located in Mexico.

The court does not dispute that the testimony of Monique Roberts will be significant to plaintiffs' case. However, Roberts  is a current employee of Submar and can be made available to plaintiffs by condition of this dismissal. Wendy Buskop and Pat Hendricks, on the other hand, have little to no involvement with Submarelher or the Mexican copyrights at issue. Buskop was Submar's patent counsel in the mid-1990s, long before the facts made the basis of these claims arose. Dkt. 41, Ex. 4. Buskop also attested to the fact that she has had no involvement in any Mexican intellectual property filings while at Submar. *Id.* Also, Hendricks, as the original draftsman of Submar's

patents, cannot convincingly be said to have any relevant information related to the conspiracy alleged by plaintiffs.

It is apparent from the briefing and the depositions conducted thus far that Ken McCallister is the only truly significant witness in Houma, Louisiana that may be unavailable to plaintiffs in litigation in Mexico because he is no longer under the control of Submar.  McCallister was the president of Submar until October 2010 and allegedly met with and spoke to the president of Submarelher in Mexico and the United States on a few occasions.  Dkt. 37, Ex. A at 11.  While the court does not dispute McCallister's relevancy, Submar's current president and corporate representative testified that he thoroughly reviewed all of McCallister's files and did not find any information related to the creation, provision, or enforcement of the copyrights issued to Submarelher's president.  *Id.* at 77.  Further, Monique Roberts, whose tenure completely overlapped with McCallister, acted as the point of contact between Submar and Submarelher related to intellectual property filings and royalties of Submarelher.  Dkt. 40, Ex. 3.  She was privy to much of the correspondence between McCallister and Submarelher.  *Id.*  Based on her knowledge and after reviewing McCallister's files, she likewise does not have any information pertinent to the alleged conspiracy.  *Id.*

 Despite the numerous depositions conducted to date, plaintiffs have developed very little evidence supporting their allegation that Submar was involved in this conspiracy.  The deposition testimony of the current and former presidents of Submar indicated that Submar had little to no involvement with the operations at Submarelher.  Dkt. 37, Ex. A at 19 (current president of Submar, Derek Dice, testified Submar provided very little technical guidance, advisory services or other functions to Submarelher and they were mostly "self-sufficient").  Further, Submar did not provide

Submarelher any assistance in creating or obtaining the Mexican copyrights or in the enforcement of the copyrights. *Id.* at 41, 61. Submarelher and its president took all the acts necessary to create, obtain, and petition for enforcement of the Mexican copyrights. All of these acts took place in Mexico, which the plaintiffs concede. Dkt. 37 at 21. Therefore, the potential absence of McCallister from this litigation does not tip the scales in favor of retaining the case in this court.

While the court recognizes that there will be witnesses and documents in both countries and documents in both English and Spanish, the vast majority of relevant witnesses and documents predominate in Mexico. Even if plaintiffs frame the basis of this lawsuit as a conspiracy hatched in the United States, the evidence regarding the issuance and enforcement of the copyrights by a Mexican company, the seizure of Iner Servicios, and the arrest of Farrera Redondo all occurred in Mexico. The few witnesses and documents which may be located in the United States do not outweigh the overwhelming amount of evidence that would be located in Mexico.

The court next considers the availability of compulsory process for the attendance of unwilling witnesses and the costs of securing attendance of witnesses. *In re Air Crash*, 821 F.2d at 1162. As noted above, McCallister is likely the one significant, unwilling witness that would not be amenable to process if this case were dismissed in favor of Mexico. However, this fact is overshadowed by the costs of securing the testimony of witnesses who predominantly reside in Mexico. The key witnesses in this case will primarily be employed at the two Mexican businesses party to this suit. These witnesses will be available to testify because they are under the control of their respective employers, however, the costs of securing their testimony in the United States will be great.

Plaintiffs will also be protected from any resistance from Submar in making its witnesses available because the court will condition the dismissal on defendants' agreement to make witnesses located in the United States available as required by Mexican law.  Further, this court cannot compel the presence of the additional Mexican witnesses who are not under the control of the parties and who were involved in the issuance and enforcement of the copyrights.  *DTEX, L.L.C. v. BBVA Bancomer, S.A.*, 508 F.3d 785, 799 (5th Cir. 2007).  Thus, this factor also tends to weigh in favor of dismissal.

The overwhelming majority of events giving rise to this lawsuit occurred in Mexico.  The location of the parties and the corresponding location of the witnesses and documents dictate that this case is best suited to be resolved in Mexico.  Further, the court will impose conditions on dismissal to address plaintiffs' concerns regarding witnesses and documents in the United States.  The private interest factors, therefore, weigh in favor dismissal.

### C.  Public Interest Factors

While the court does not necessarily have to consider the public interest factors given the weight of the private interest factors in favor of dismissal, the court will address the public interest factors because many of them also weigh heavily in favor of dismissal.  The public interest factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies resolved at home, the interest in having a trial of a diversity case in a forum that is familiar with the law that must govern the action, the avoidance of unnecessary problems in conflicts of law or in the application of foreign law, and the unfairness of burdening citizens in an unrelated forum with jury duty.  *In re Air Crash*, 821 F.2d at 1163.

14

The first factor does not weigh strongly on either side of the analysis because this case will not unduly burden the court's docket.  The number of parties and types of claims are similar to other cases before this court.  However, the other factors support dismissal of this cause in favor of Mexico.  The local interest factor heavily supports having this cause tried in Mexico.  Plaintiffs allege facts regarding the seizure and closure of its Mexican company due to invalid Mexican copyrights being issued and enforced by corrupt Mexican officials.  Additionally, the plaintiffs claim the enforcement of these  invalid Mexican copyrights led to impermissible criminal prosecutions in Mexico.  Mexico, thus, has the greatest ties to this litigation and the greatest interest in reviewing and regulating its own activities.

Further, it is likely that Mexican law would apply given that, in this diversity case, Texas follows the "most significant relationship test."  *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000); *Zermeno*, 246 F. Supp. 2d at 663.  Mexico has the most significant relationship to the facts of this case.  Mexico is the place where the copyrights were issued, Iner Servicios was shut down, and criminal prosecutions initiated.  Moreover, six of the nine parties are Mexican.  Burdening Texas citizens with a case that has such few ties to the state also weighs in favor of dismissal.

## IV.  CONCLUSION

Because the court finds that the interests of justice and convenience of the parties and the court are best served by dismissing this action in favor of Mexico as an available and adequate alternative forum for resolution of these matters, the court grants defendants' motions to dismiss (Dkts. 18, 20) on forum non conveniens grounds, provided: 1) defendants submit to service of process and jurisdiction of a Mexican civil court for the resolution of claims arising under Mexican law based on the facts alleged in this lawsuit; 2) defendants waive any jurisdictional or statute of

limitation defenses that accrued after the filing of this suit; 3) defendants agree to make all witnesses and documents within their control available in Mexico in accordance with Mexican law; and 4) defendants agree to satisfy any final judgment entered by a Mexican civil court for causes filed by plaintiffs based on the facts alleged in this lawsuit.  Should defendants fail to comply with these conditions, this court will resume jurisdiction, upon request, and reopen the case.

Further, the court denies plaintiffs' motion to stay (Dkt. 16) as moot.

It is so ORDERED.

Signed at Houston, Texas on September 9, 2013.

_____
Gray H. Miller
United States District Judge